### CARDWELL v. E. J. WILKINS CO.

(Circuit Court of Appeals, Second Circuit. December 9, 1912.)

#### No. 28.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WALLET.

> The Cardwell patent, No. 940,853, for a wallet designed to carry paper money, is void for lack of invention; also *held* not infringed, if conceded validity.

Appeal from the District Court of the United States for the Southern District of New York; C. M. Hough, Judge.

Suit in equity by James R. Cardwell against the E. J. Wilkins Company to restrain infringement of patent No. 940,853. Decree for defendant, and complainant appeals. Affirmed.

D. Anthony Usina and Linthicum, Belt & Fuller, all of New York City (Charles C. Linthicum, of New York City, and William O. Belt, of Chicago, Ill., of counsel), for appellant.

Edward Q. Keasbey and George M. Keasbey, both of Newark, N. J., for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The Cardwell patent is for a wallet designed to carry paper money. The first claim only is involved and it sufficiently describes the patented device. It is as follows:

> "A wallet comprising a substantially flat sheet of suitable wallet material presenting a superficial area approximating that of a bank note and having creases extending longitudinally and transversely and dividing the sheet into substantially four equal parts, whereby paper money laid upon the sheet may be readily interfolded with the wallet, and a wing extending from the main sheet of the wallet adapted to be folded over the paper money, material of the sheet being removed where the lines of the creases intersect to permit the sheet rapidly to fold."

The wallet is made by taking a flat sheet of leather, or similar material, a little larger than a bank note and creasing it longitudinally and transversely so that it will be divided into four substantially equal parts. A wing of the same material is attached to the main sheet to hold the money in place and at the point in the center where the creases intersect the material is cut away to permit the sheet to fold readily. In short, the alleged invention consists of a bill-fold creased so as to fold longitudinally and transversely with a hole cut in the

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

material at the point where the creases intersect. The practice of carrying paper money by folding a roll of bills lengthwise and then across was well known at the date of the application.

It is manifest that a wallet to cover money so folded must conform to the size of the bills and must be folded as the bills are folded. At the central point where four thicknesses of leather are added to the thickness of the bills, it is manifest that the bunching and buckling will be lessened by removing the leather. We do not think it required an exercise of the inventive faculties to do this. The King patent of December 1, 1908 shows the precise construction in this particular. The specification says:

"The apertures 19–20 materially facilitate the folding, and prevent the wrinkling or buckling of the papers at the corners when folded."

It is unnecessary to discuss the question suggested in the appellant's brief that the King patent is not a fair reference; it is enough that it confirms our opinion that any intelligent mechanic desiring to prevent buckling would remove as much of the material as possible at the point where the buckling occurs.

The Caldwell patent may describe a convenient wallet for one who desires to carry his bills in a separate book, and folded in the particular manner described. Its novelty in this respect gave it a certain popularity with the public but we cannot believe that it required invention to make a leather bill-fold and cut away the leather at the point where the bills and leather would obviously buckle and bunch. It was the work of the mechanic and not of the inventor; it required no more inventive genius to make the hole at the intersection of the two seams than it did to make the eyelet hole in the upper right hand corner of the wallet, to hold the chain hook.

But, in any event, the claim is not infringed. In no circumstances can a broad construction be given to the claim. It must, in view of the prior art, and the extreme simplicity of the improvement, be limited to the precise structure shown and described, and, as so limited, there can be no pretense of infringement. The material of the defendant's sheet is not removed where the lines of the creases intersect to permit the sheet readily to fold. This opening is clearly described and is pointed out by a reference letter $f$ on the drawings. The description says:

"In order to facilitate the folding of the wallet the material composing the main sheet is discontinued just where the longitudinal and transverse creases intersect, so that said material will not buckle and bunch at this intersection."

It then proceeds to show that this buckling is prevented by making a distinct aperture at the point where the creases intersect. The drawing shows this aperture surrounding the center point, the material being taken equally from the upper and lower fold, half being above and half being below the dividing line $c$.

The defendant's wallet has no such aperture; its opening, if the space between the upper folds which are entirely separated from each other, can be called an aperture is wholly in the upper fold. Nothing

is cut away from the lower fold below the dividing crease and the tendency of the lower fold to buckle at the point of intersection is in no way lessened by the fact that there is an open space directly above it in the upper half.   In other words, nothing is removed from the lower side of the fold at the point of intersection. . Such removal is clearly shown in the drawings and described in the specification, but is not found in defendant's structure.

The decree of the Circuit Court is affirmed with costs.